172 P.3d 368 (2007)
FLUOR ENTERPRISES, INC., a California corporation, Respondent,
v.
WALTER CONSTRUCTION, LTD., a Washington corporation, formerly known as Walter and SCI Construction, Ltd., Walter Construction (USA), Inc, a Washington corporation; Walter Construction (USA), LLC, a Washington limited liability company, Appellant.
No. 59806-6-I.
Court of Appeals of Washington, Division 1.
November 19, 2007.
*369 Richard Miles Stanislaw, Christopher Wright, Stanislaw Ashbaugh LLP, Seattle, WA, for Respondent.
Catherine Wright Smith, Howard Mark Goodfriend, Edwards Sieh Smith & Goodfriend PS, Arthur Daniel McGarry, Bradley Lew Powell, Oles Morrison Rinker & Baker LLP, Seattle, WA, for Appellant.

PUBLISHED IN PART
AGID, J.
¶ 1 This appeal involves consolidated claims for breach of a settlement agreement and breach of a construction subcontract that arose out of a construction dispute between a contractor and subcontractor. The trial court entered judgment for the contractor on an arbitration award on the settlement agreement claim. The contractor sought to enforce the judgment by obtaining a writ of execution and directing a sheriff's sale of the subcontractor's pending construction claim against the contractor. The subcontractor moved to quash the writ and stay the sheriff's sale, but the trial court denied the motion. We granted discretionary review. Because both parties' claims were consolidated in the same lawsuit and the trial court did not enter CR 54(b) findings that the judgment confirming the award was final and there was no just reason to delay its entry, the judgment was not yet enforceable. Accordingly, we reverse and remand to the trial court.

FACTS
¶ 2 In 1996, the Department of Corrections (DOC) entered into a construction contract with Fluor Enterprises, Inc. (Fluor) to construct the Stafford Creek Corrections Center for approximately $127 million. Fluor then subcontracted the structural steel and concrete work to Walter Construction, Ltd. (Waiter). Disputes arose between DOC and Fluor and between Fluor and Walter resulting in several lawsuits which have a complicated procedural history.
¶ 3 The litigation between Fluor and Walter that is the subject of this appeal involves two sets of claims. The first arose out of a settlement agreement between Walter and Fluor (the "Settlement Agreement" suit), and the other related to the construction subcontract (the "Construction Claims" suit). These claims arose when DOC sought a declaratory judgment in King County Superior Court to end or limit its liability to Fluor. Walter and Fluor decided to join forces against DOC. They entered into an agreement (the "Settlement Agreement") in which Walter agreed to assign its claims against DOC to Fluor and to share in whatever Fluor recovered from DOC in its suit against DOC. Walter also agreed to release Fluor from a $3 million subcontract balance, and Fluor agreed to pay Walter $3 million up front.
*370 ¶ 4 Fluor then asserted the claims Walter had assigned to it in its answer to DOC's complaint. DOC moved to strike those portions of Fluor's claim. The trial court granted the motion, ruling that the Settlement Agreement was invalid under the Severin[1] doctrine.
¶ 5 Following this order, Fluor and Walter pursued independent claims against each other. Fluor first sued Walter in King County Superior Court seeking the return of the $3 million paid under the Settlement Agreement (the "Settlement Agreement" suit). Walter counterclaimed, asserting that Fluor breached the Settlement Agreement and claiming resulting damages. Walter then sued Fluor in Grays Harbor County Superior Court, alleging it breached the construction contract and reserving its right to compel arbitration under the subcontract (the "Construction Claim" suit). This case was later transferred to King County Superior Court.
¶ 6 In September 2005, Fluor moved for sanctions against Walter for discovery violations in the Settlement Agreement suit. In October 2005, the trial court granted the motion, ordering sanctions against Walter and striking Walter's counterclaims. Fluor then amended its complaint to seek additional damages arising from Walter's breach of the construction subcontract.
¶ 7 In February 2006, Walter filed a motion in the court to which the Construction Claims suit was assigned to consolidate both cases, compel arbitration of the construction claims, and stay other proceedings. That trial judge granted the motion and consolidated the cases before the judge who was presiding over the Settlement Agreement suit.
¶ 8 The parties ultimately proceeded to arbitration on the Settlement Agreement suit in the summer of 2006. Arbitration on the Construction Claims was set for September 2007 before a panel of American Arbitration Association ("AAA") arbitrators. In August 2006, Fluor prevailed in the Settlement Agreement arbitration. The arbitrator awarded it $3 million, but he denied Fluor's request to enjoin Walter from pursuing its construction claims. Fluor then moved in the trial court to confirm the arbitrator's award and to enter judgment on that award. Fluor also moved to clarify the trial court's original 2005 sanctions order that dismissed Walter's counterclaims in the Settlement Agreement suit.
¶ 9 On October 11, 2006, the trial court entered judgment for Fluor on the Settlement Agreement claim and clarified the previous sanctions order by stating: "any counterclaim by Walter against Fluor on the Stafford Creek Project is precluded." Fluor then executed on the judgment and obtained writs of garnishment. Walter moved to quash these writs, but the trial court denied the motion. Fluor also asked the arbitrators who were scheduled to hear the Construction Claims to terminate those claims based on the trial court's October 11, 2006 order dismissing Walter's counterclaims.
¶ 10 Waiter then filed a notice of appeal of the trial court's October 11, 2006 order, but shortly thereafter asked this court to dismiss it as premature. Walter argued that the appeal was premature because the AAA arbitrators had not yet decided whether the trial court's order terminated Walter's claims in the Construction Claims suit. Walter reasoned that if the AAA arbitrators did not terminate its construction claims, there would be nothing from which to appeal. While Walter's motion to dismiss the appeal was pending in this court, the AAA arbitrators denied Fluor's motion to terminate Walter's construction claims. On March 12, 2007, this court granted Walter's motion to dismiss the appeal, determining that it was only final as to some of the claims and therefore not yet appealable.
¶ 11 Meanwhile, Fluor obtained an ex parte writ of execution for the Settlement Agreement judgment which directed a sheriff's sale of Walter's pending construction claim, Walter's only claimed asset. Walter moved to quash the writ of execution and *371 stay the sale. On March 23, 2007, the trial court denied the motion and Walter sought discretionary review. While Walter's motion for discretionary review was pending, Fluor moved in the trial court to sever the Construction Claims from the Settlement Agreement claims. The trial court denied the motion on May 15, 2007. On June 17, 2007, this court granted discretionary review of the trial court's order denying Walter's motion to quash the writ of execution
I. Enforceability of the Settlement Agreement Judgment
¶ 12 Walter challenges the trial court's order allowing Fluor to execute on the Settlement Agreement judgment by directing a sheriff's sale of Walter's construction claim, its only asset. Walter argues that (1) the trial court cannot order enforcement of the judgment because it is not a final judgment, and (2) even if it were a final judgment, to allow Fluor to execute on this judgment would result in Fluor's improper control of Walter's pending claims against it. Fluor maintains that under former RCW 7.04,[2] the judgment is final and it may properly execute on it. Alternatively, Fluor argues that this court should remand and order the trial court to sever the claims.
¶ 13 Civil Rule 54(b) governs entry of judgments on multiple claims and provides that "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination in the judgment, supported by written findings, that there is no just reason for delay and upon an express direction for the entry of judgment."[3] Thus, we have held that four things are required for entry of a final judgment under CR 54(b): "(1) more than one claim for relief or more than one party against whom relief is sought; (2) an express determination that there is no just reason for delay; (3) written findings supporting the determination that there is no just reason for delay; and (4) an express direction for entry of the judgment."[4] In Loeffelholz v. Citizens for Leaders with Ethics and Accountability Now (C.L.E.A.N.).[5] the court held that entry of a final judgment should await the resolution of all claims for and against all parties. The court found that the following reasons justified the trial court's delay of the entry of a final judgment until all claims had been resolved: "(1) to offset judgments favorable to each side before any enforcement activity takes place; (2) to preclude the disruptive effects of enforcement and appellate activity while trial court proceedings are still ongoing; and (3) to avoid a multiplicity of appeals."[6]
¶ 14 While there is substantial Washington case law on whether a partial judgment is appealable, there is no case law specifically addressing whether a partial judgment is immediately enforceable if it is not appealed.[7] The federal approach turns on whether a judgment satisfies CR 54(b) and is supported *372 by (1) the trial court's finding that there is no just reason for delay and (2) its express direction for entry of the partial final judgment.[8] If the trial court does not enter the requisite findings, the judgment has no binding effect and cannot be the subject of execution proceedings or other enforcement efforts until a final judgment is entered in the case.[9] As the court explained in Redding & Co. v. Russwine Construction Corp.:
The rule's [CR 54(b)] requirement of explication in the two respects mentioned is not a technicality in the interest of form; rather, it serves primarily the important function of denoting unmistakably that a final order has been entered so that the losing party may either file a timely appeal or pay the judgment. We think the role Rule 54(b) plays with reference to the finality of a judgment for purposes of appeal has implications as regards its finality for purposes of execution as well.[[10]]
¶ 15 Likewise, other state courts addressing this issue have applied CR 54(b) and held that execution of a partial judgment was unlawful when no final judgment had been rendered on all of the claims.[11] In Electrolert v. Lindeman, the Ohio court held that the trial court unlawfully exercised judicial power by authorizing a party to execute on a judgment that was not certified as final under CR 54(b) and a separate related claim was unresolved at the time the trial court entered the judgment.[12] The court held that "[o]ne cannot execute on a claim absent a final judgment as to that claim."[13] Otherwise, the court explained, "a prevailing party could, under court authority, seize the property, garnish the proceeds, or sell the assets of the losing party without the latter having any immediate avenue available for challenging the underlying interlocutory judgment."[14] In the ruling granting discretionary review here, the commissioner echoes this rule, explaining:
An order that is not appealable because it is not final is also not subject to execution. While there is no case law spelling out this axiom, it makes sense because otherwise a prevailing party could execute on a judgment before the losing party has the opportunity to seek appellate review to which it is not entitled by right until all claims are resolved. RAP 2.2(d). . . . [[15]]
Thus, to determine whether the judgment was enforceable, we must decide whether it was a final order under the CR 54(b) criteria.
¶ 16 Here, there is no dispute that there is more than one claim for relief. Nor do the parties dispute that the trial court's order does not expressly direct entry of a CR 54(b) final judgment or make any findings that there was no just reason for delay. Thus, the order does not meet the requirements of CR 54(b).
¶ 17 Indeed the reasons justifying the trial court's decision to delay entering a final judgment in Loeffelholz existed here: to preserve the opportunity to offset judgments favorable to each side before any enforcement took place, and to prevent the disruptive effects of enforcement and appeal on the ongoing trial proceedings.[16] Because the cases had earlier been consolidated and the Construction Claim was still unresolved, delaying entering final judgment on the Settlement Agreement claim was necessary so the trial court could offset the judgments on both claims before allowing enforcement of them. Obviously, this cannot be done until after the AAA arbitration of Walter's Construction Claims. The effect of enforcement here was also more than disruptive: allowing the sheriff's sale of Walter's construction claim would have completely eliminated its ability to pursue *373 that claim. Thus, absent express CR 54(b) findings that there is no just reason for delay, we hold that the order was not final and therefore not enforceable.
A. Effect of RCW 7.04 on Enforceability of Arbitration Awards
¶ 18 Fluor contends that under former RCW 7.04.150, 7.04.190 and 7.04.210 (2004), the trial court was authorized to enter and enforce a judgment confirming the arbitrator's award. Former RCW 7.04.210 provided that "judgment so entered has the same effect, in all respects as, and is subject to all the provisions of law relating to, a judgment in an action." Former RCW 7.04.150 stated:
At any time within one year after the award is made, unless the parties shall extend the time in writing, any party to the arbitration may apply to the court for an order confirming the award, and the court shall grant such an order unless the award is beyond the jurisdiction of the court, or is vacated, modified, or corrected, as provided in RCW 7.04.160 and 7.04.170. . . .
Former RCW 7.04.190 stated: "Upon the granting of an order, confirming, modifying, correcting or vacating an award, judgment or decree shall be entered in conformity therewith."
¶ 19 Fluor argues that these statutes authorize the trial court to enforce such a judgment upon its entry. Fluor would be correct if there were only one set of claims and counterclaims and an arbitrator had entered an award resolving those claims. Here not all the issues have been resolved because they involve two contracts with two separate arbitration provisions. We hold that arbitration awards are not automatically enforceable by virtue of an order confirming and entering judgment on the award when there are still unresolved claims pending in the same lawsuit and no CR 54(b) order has been entered.[17] Under these circumstances, Fluor's reliance on former RCW 7.04 is misplaced. The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. See RCW 2.06.040; CAR 14.
WE CONCUR: GROSSE and BECKER, JJ.
NOTES
[1] Under the Severin doctrine, a prime contractor who has been wholly released by a subcontractor may not prosecute the subcontractor's claims up the chain of privity against the owner. Severin v. United States, 99 Ct.Cl. 435 (1943), cert. denied, 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944).
[2] RCW 7.04 was repealed effective January 1, 2006, and replaced by RCW 7.04A. The repealed version applies here because the action was commenced before January 12, 2006. RCW 7.04A.913.
[3] Washington adopted the identical federal rule, Fed.R.Civ.P. 54(b). CR 54(b) provides:

Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
[4] Nelbro Packing Co. v. Baypack Fisheries, 101 Wash.App. 517, 523, 6 P.3d 22 (2000) (citing Pepper v. King County, 61 Wash.App. 339, 345, 810 P.2d 527 (1991)).
[5] 119 Wash.App. 665, 82 P.3d 1199, review denied. 152 Wash.2d 1023, 101 P.3d 107 (2004).
[6] Id. at 694, 82 P.3d 1199.
[7] See 14A KARL B. TEGLAND. WASH. PRACTICE: CIVIL PROCEDURE § 25.25A (1st ed. Supp.2006).
[8] Id.
[9] Id.
[10] 417 F.2d 721, 727 (D.C.Cir.1969) (footnotes omitted).
[11] See State ex rel. Electrolert v. Lindeman, 99 Ohio App.3d 154, 650 N.E.2d 137 (1994), City of Salina v. Star B., Inc., 241 Kan. 692, 739 P.2d 933, 936 (1987).
[12] 99 Ohio App.3d 154, 650 N.E.2d 137, 140 (1994).
[13] Id. (footnote omitted).
[14] Id.
[15] (Footnote omitted.)
[16] See 119 Wash.App. at 694, 82 P.3d 1199.
[17] This holding has no impact on the enforceability of judgments entered under chapter 7.04 or 7.04A RCW confirming an arbitration award that resolves the parties' claims.